# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

          Plaintiff,

          v.

JIMMY VUE,

          Defendant.

Case No. 3:25-cr-00052-SLG-KFR

## ORDER ON REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS

Before the Court at Docket 21 is Defendant Jimmy Vue's Motion to Suppress. The Government responded in opposition at Docket 28. The motion was referred to the Honorable Magistrate Judge Kyle F. Reardon. Without holding an evidentiary hearing, Judge Reardon issued a Report and Recommendation at Docket 32, in which he recommended that the Motion to Suppress be denied. Defendant filed objections to the Report and Recommendation at Docket 40. The Government did not file a response to Defendant's objections.

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1). That statute provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." The statute further provides that a court is to "make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made."

## BACKGROUND

The Court recounts the facts as presented in the Report and Recommendation as Defendant does not object to Judge Reardon's factual findings. As recounted in the search warrant affidavit, on the evening of January 10, 2025, Anchorage Police Department ("APD") officers responded to a reported drive-by shooting at a residence on Klevin Street.[1] The residence was occupied by a man, a woman, and their five children.[2] The responding officers found shell casings in the roadway outside the residence, bullet marks on one side of the residence, and bullet fragments and damaged property inside the residence.[3] None of the occupants of the residence were injured during the shooting.[4]

After the shooting, the man spoke to the officers and offered a theory as to the identity and motive of the perpetrator. The man stated that he believed the shooting had occurred to scare him and his family from testifying at the trial of Chue Yang, who was charged with murdering the man's sister.[5] The man reported that the trial had recently begun, that Mr. Yang's family "w[as] in town," and that Mr. Yang's family was "associated with the gang 'Mod.'"[6]

---

[1] Docket 19-1 at 2.

[2] Docket 19-1 at 2.

[3] Docket 19-1 at 2.

[4] Docket 19-1 at 2.

[5] Docket 19-1 at 2.

[6] Docket 19-1 at 2.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 2 of 12

Case 3:25-cr-00052-SLG-KFR     Document 43     Filed 07/17/26     Page 2 of 12

APD Detective Michael Wisel was assigned to investigate the case. Detective Wisel initially reviewed multiple surveillance videos of the incident, including two videos taken from the property across the street from the family's residence.[7] Those videos showed a dark pickup truck driving by the family's residence and stopping in front of the adjacent residence, one minute before the shooting was reported to APD.[8] The videos further showed a person opening the passenger door of the truck, standing up with their feet inside the vehicle, raising their arms over the top of the truck, and firing multiple shots in the direction of the family's residence, before the truck sped away.[9] The videos did not provide a clear view of the driver's side of the truck, and so they did not indicate whether the driver might also have had a firearm or fired any shots.[10] However, the videos did show that the truck appeared to be a midsize, extended-cab Toyota with several distinctive features, including tailgate markings, a license plate mounted on the passenger side of the tailgate next to the brake light, a sticker on the extended-cab passenger window, large tires, and was lifted.[11]

Detective Wisel later learned more information about the truck. First, Detective Wisel reviewed video footage showing that on July 3, 2024, a relative of

---

[7] Docket 19-1 at 2.

[8] Docket 19-1 at 2.

[9] Docket 19-1 at 2.

[10] Docket 19-1 at 2.

[11] Docket 19-1 at 2.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 3 of 12
Case 3:25-cr-00052-SLG-KFR    Document 43    Filed 07/17/26    Page 3 of 12

Mr. Yang had been arrested in a black Toyota Tacoma that bore the same distinctive features as the truck involved in the drive-by shooting six months later.[12] Second, a records check revealed that on December 21, 2024, about three weeks before the shooting, Defendant became the registered owner of the truck.[13] The registered address was listed as an apartment unit on San Roberto Avenue in Anchorage.[14] Third, Detective Wisel reviewed video footage from December 22, 2024, that appeared to show Defendant working on a black Toyota Tacoma outside that same apartment unit on San Roberto Avenue.[15] Fourth, Detective Wisel called Defendant's next door neighbor, who stated that she did not know the man who lived in the adjacent unit, but that man had a dark colored Toyota pickup truck.[16] And fifth, Detective Wisel drove by the apartment unit on San Roberto Avenue on January 21, 2025, and saw a Toyota pickup truck with an extended cab, wheels, tires, bumper, and license plate position that matched those of the truck involved in the drive-by shooting.[17] Detective Wisel observed, however, that the truck was red in color and appeared to have been spray painted with no

---

[12] Docket 19-1 at 3, 6.

[13] Docket 19-1 at 3.

[14] Docket 19-1 at 3.

[15] Docket 19-1 at 3, 6.

[16] Docket 19-1 at 3.

[17] Docket 19-1 at 3.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 4 of 12

clearcoat, and that the truck did not have the sticker that had previously been on the extended cab passenger window.[18]

Detective Wisel also researched Defendant's criminal history and connections to Mr. Yang. As to the former, a records check indicated that Defendant had a 2007 felony conviction in California for Assault Person with Semiauto Firearm with an enhancing factor of Street Gang Act Used Firearm, and a 2020 arrest in California for Felon in Possession.[19] As to the latter, Detective Wisel learned that "multiple [Yang] family members" appeared in the "friends" list on Defendant's Facebook page, and that Mr. Yang appeared in the "friends" list on Defendant's fiancée's Facebook page.[20]

Based on this information, Detective Wisel applied for a state warrant to search Defendant's truck and residence for firearms, ammunition, and proof of ownership.[21] On January 21, 2025, a state magistrate judge granted the requested search warrant.[22] Later that day, Defendant was interrogated by Detective Wisel and was ultimately arrested.[23] The search of Defendant's residence yielded six firearms and ammunition, while the search of Defendant's truck yielded no

---

[18] Docket 19-1 at 3.

[19] Docket 19-1 at 3.

[20] Docket 19-1 at 3.

[21] Docket 19-1 at 4.

[22] Docket 19-1 at 4.

[23] *See* Docket 19-6.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 5 of 12

Case 3:25-cr-00052-SLG-KFR    Document 43    Filed 07/17/26    Page 5 of 12

evidence.[24]  On August 20, 2025, a grand jury returned an indictment charging Defendant with one count of felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[25]

Defendant now moves to suppress the evidence derived from the search of his residence on January 21, 2025.[26]  He maintains that the affidavit in support of the search warrant "failed to establish a reasonable nexus between the criminal offense under investigation and his residence."[27]  He also maintains that the good faith exception to the warrant requirement does not apply.[28]

The Government disagrees, maintaining that Detective Wisel's affidavit in support of the search warrant "provided a substantial basis for Judge Hanley's determination of probable cause to believe the apartment contained evidence of assault and misconduct involving a weapon."[29]  And, "[e]ven if the warrant was invalid," the Government contends that "the good faith exception to the exclusionary rule applies and suppression should be denied."[30]

---

[24] *See* Docket 21 at 5.

[25] Docket 2.

[26] Docket 21.

[27] Docket 21 at 1; *see also* Docket 21 at 8 ("Even assuming there were facts supporting the reasonable inference that Vue's vehicle had been involved in a drive-by shooting, the affidavit makes no attempt to suggest that Mr. Vue himself was either the driver or the passenger.").

[28] Docket 21 at 1-2, 10-12.

[29] Docket 28 at 4.

[30] Docket 28 at 6.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 6 of 12

In the Report and Recommendation, Judge Reardon recommended that Defendant's Motion to Suppress at Docket 21 be denied.[31] Judge Reardon found that the search warrant was invalid for lack of probable cause but that the good faith exception applied and suppression of the evidence was not warranted.[32] The Court now considers de novo Defendant's objections to Judge Reardon's Report and Recommendation.

## DISCUSSION

Defendant objects to Judge Reardon's findings that the good faith exception applies and that suppression of the evidence seized from Defendant's home is not warranted.[33] Defendant disagrees with Judge Reardon's reliance on *United States v. Elmore*, 917 F.3d 1068 (9th Cir. 2019), in support of his recommendation that the good faith exception applies.[34] Defendant maintains that this case is more akin to *United States v. Hove*, 848 F.2d 137 (9th Cir. 1988), and that here, "[t]he facts known to the officers who searched Vue's home were significantly weaker than those in *Hove*."[35]

In *Hove*, a police officer responded to a bomb complaint from Kenneth Hove. Over the following two weeks, Mr. Hove received two threatening letters in the

---

[31] Docket 32 at 1.

[32] Docket 32 at 6-14 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)).

[33] Docket 40 at 2.

[34] Docket 40 at 2-4.

[35] Docket 40 at 4-5.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 7 of 12

mail, which were composed of words cut out of a magazine. The letters were sent in envelopes that had been typed on a typewriter that had some malfunction in its keys. During the course of the investigation, the officer spoke to Mr. Hove, his neighbors, and the sister of his ex-wife, the defendant Kimberly Hove. The officer suspected that Kimberly Hove was sending the letters to Mr. Hove and planting pipe bombs under his car.[36]

The officer learned that Ms. Hove and the couple's child had been staying with several different relatives and that one of their current residences may have been with Ms. Hove's father. The officer discovered that Ms. Hove was staying at this residence by tracing a phone number given to him by Ms. Hove and her sister. The officer visited Ms. Hove's father's house and observed toys in the yard and a car, previously identified as belonging to Ms. Hove, in the parking lot. The officer testified that he recited these facts to his stenographer when preparing his affidavit for a search warrant, but the final affidavit did not include this information. Therefore, the final warrant application set forth facts suggesting that Kimberly Hove had sent threatening letters, but it never linked Kimberly Hove or any suspected criminal activity in any way with Ms. Hove's father's residence. A magistrate judge issued a search warrant based on the officer's affidavit.[37]

---

[36] *Hove*, 848 F.2d at 138-39.

[37] *Id.* at 139.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 8 of 12
Case 3:25-cr-00052-SLG-KFR    Document 43    Filed 07/17/26    Page 8 of 12

The warrant was executed by a different police officer. A search of Ms. Hove's father's residence revealed a magazine with words cut out of it that matched the threatening letters. Ms. Hove moved to suppress the evidence seized; the district court denied Ms. Hove's motion, finding that "in light of the [officer's] investigation, probable cause existed to believe that Kimberly Hove resided at [her father's house]" and that the executing officer "executed the warrant with objective good faith that probable cause existed to justify the search."[38]

Ms. Hove appealed. On appeal, the Ninth Circuit reversed, holding that "it is clear that probable cause to search the [father's] residence was not established before the magistrate because the affidavit submitted to obtain the warrant did not explain the significance or relevance of searching this particular location."[39]

As to the good faith exception, the Circuit Court held that "the affidavit submitted by [the investigating officer] in support of this search warrant was so deficient that any official belief in the existence of probable cause must be considered unreasonable."[40] The Circuit explained that "*Leon* creates an exception to the exclusionary rule when officers have acted in reasonable reliance on the ruling of a judge or magistrate. The point is that officers who present a colorable showing of probable cause to a judicial officer ought to be able to rely on

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 9 of 12

that officer's ruling in executing the warrant."[41]  Further, as explained by the Circuit Court, "[t]he test for reasonable reliance is whether the affidavit was sufficient to 'create disagreement among thoughtful and competent judges as to the existence of probable cause.'"[42]  And "because the affidavit offers no hint as to why the police wanted to search [the father's] residence" "reasonable judges could not disagree over whether probable cause existed to search the [residence]."[43]

In his objections, Defendant maintains that "[a]s in *Hove*, there was no plausible nexus between Mr. Vue's residence and the crime under investigation."[44] In Defendant's view, "[r]easonable judges could not disagree over whether probable cause existed to search Vue's residence, because the affidavit offers no reason why the police would have believed that either Vue was himself involved in the shooting, or that evidence of the shooting would be found in that location."[45]

The Court disagrees.  In *Hove*, "the affidavit offer[ed] no hint as to why the police wanted to search [the defendant's father's] residence."[46]  In contrast, here, as highlighted by Judge Reardon, the relevant facts and circumstances described in Detective Wisel's affidavit were as follows: (1) an occupant of the victims'

---

[41] *Id.* at 140 (citing *Leon,* 468 U.S. at 916-17).

[42] *Id.* at 139 (quoting *Leon*, 468 U.S. at 926).

[43] *Id.* at 139-40.

[44] Docket 40 at 5.

[45] Docket 40 at 6.

[46] *Hove*, 848 F.3d at 140.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 10 of 12

residence theorized that Mr. Yang's family, who was allegedly "associated with the gang 'Mod,'" was responsible for the shooting; (2) about six months before the shooting, a relative of Mr. Yang had been arrested in the truck that was involved in the shooting; (3) about three weeks before the shooting, Defendant had become the registered owner of the truck; (4) video footage from December 22, 2024, showed Defendant working on the truck at the residence; (5) 11 days after the shooting, the truck was parked at the residence and appeared to have been recently spray painted red and the stickers that had previously been on the extended cab windows were gone; (6) Defendant was "friends" on Facebook with "multiple" unidentified relatives of Mr. Yang; and (7) Defendant had a 2007 conviction in California for a gang-related assault involving a firearm and a 2020 arrest in California for Felon in Possession.[47] Further, the truck was registered in Defendant's name and the physical address that Defendant used on his truck registration was the San Roberto Avenue apartment that was identified and searched pursuant to the search warrant.

While in *Hove* there was "no hint" as to why the father's residence probably contained evidence of the crime being investigated, here, the warrant affidavit was not "bare bones"[48]; rather, it provided several concrete pieces of evidence giving rise to at least a colorable argument of probable cause to believe that evidence of

---

[47] Docket 32 at 7-8.

[48] *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013).

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 11 of 12

the shooting would be found at Defendant's residence.  The Court therefore agrees with Judge Reardon that "a reasonable officer would have been justified in believing they were acting in good faith in executing the search warrant for Defendant's residence."[49]  As such, suppression of the evidence seized from Defendant's residence is not warranted and Defendant's objections are OVERRULED.

### CONCLUSION

For the foregoing reasons, the Report and Recommendation at Docket 32 is **ADOPTED in part**.[50]  Because the good faith exception applies to the evidence seized pursuant to the search warrant from Defendant's residence, that evidence shall not be suppressed.  Defendant's Motion to Suppress at Docket 21 is **DENIED**.

DATED this 16th day of July, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[49] Docket 32 at 14.

[50] The Government did not file any objections.  Therefore, the Court does not review Judge Reardon's recommendation that the search warrant lacked probable cause to search the residence. *See* Fed. R. Crim. P. 59(b)(2) ("Failure to object in accordance with this rule waives a party's right to review.").  For purposes of this order, the Court assumes without deciding that the search warrant lacked probable cause to search the residence. But for purposes of applying the good faith exception, the Court believes reasonable judges could disagree over whether probable cause existed to search Mr. Vue's residence based on the search warrant affidavit. *See Underwood*, 725 F.3d at 1086.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 12 of 12

Case 3:25-cr-00052-SLG-KFR    Document 43    Filed 07/17/26    Page 12 of 12