# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

        Plaintiff,

      v.

JIMMY VUE,

        Defendant.

Case No. 3:25-cr-00052-SLG-KFR

## ORDER ON REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS

Before the Court at Docket 19 is Defendant Jimmy Vue's Motion to Suppress. The Government responded in opposition at Docket 30. The motion was referred to the Honorable Magistrate Judge Kyle F. Reardon. Without holding an evidentiary hearing, Judge Reardon issued a Report and Recommendation at Docket 31, in which he recommended that the Motion to Suppress be granted. The Government filed objections to the Report and Recommendation at Docket 38, to which Defendant responded at Docket 41. Defendant also filed objections to the Report and Recommendation at Docket 39. The Government did not file a response to Defendant's objections.

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1). That statute provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[1] A court is

---

[1] 28 U.S.C. § 636(b)(1).

to "make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made."[2]

## BACKGROUND

The Court recounted the facts leading up to the issuance of the search warrant in its order on Defendant's other Motion to Suppress and incorporates by reference those facts here.

After obtaining the search warrant that was addressed in the other Motion to Suppress, Detective Wisel asked APD Officers Mischa Carlson and Isaac Kimball to bring Defendant to the police station for an interview.[3] At about 2:30 p.m. on January 21, 2025, Officers Carlson and Kimball arrived at Defendant's place of employment, an industrial supply store.[4] The record does not contain evidence of Officer Carlson's appearance, but Officer Kimball was visibly armed and wearing a tactical vest with police markings and a badge.[5] The officers first met with Defendant's supervisor and asked for permission to speak with Defendant.[6] The officers stated that Defendant would likely not be able to finish

---

[2] *Id.*

[3] *See* Def. Ex. D-2 at 12:59–13:50 (Officer Kimball stating that Defendant was "going to have to go down with [them] and chat to detectives right now about [the investigation]," and Officer Carlson stating that Detective Wisel "just asked us to do the leg work for him").

[4] Def. Ex. D-2 at 1:05–10.

[5] Although the record does not establish whether Officer Carlson was armed or what he was wearing during the encounter, the government implies that he was armed and clad like Officer Kendall. Docket 30 at 2 (representing that "[b]oth officers were in plain clothes and did not brandish their weapons at any point").

[6] Def. Ex. D-2 at 8:10–37.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 2 of 21
Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 2 of 21

his shift because the officers were "going to go get him to talk to a detective."[7]

Defendant's supervisor agreed to retrieve Defendant.[8]

At 2:44 p.m., Defendant emerged from another part of the store and agreed to step outside into the parking lot to speak with the two officers.[9]  There, the officers and Defendant had the following exchange:

OFFICER KIMBALL: You're not under arrest anything like that, but detectives have search warrants for your house and for your truck. So we are detaining your truck today, and they also want to have a chat with you about what's going on with that. So, we already let your boss know that you're going to have to go down with us and chat to detectives right now about that.

DEFENDANT: For…?

OFFICER KIMBALL: So, we don't have, like, details of the actual investigation. It's something involving your vehicle and residence. So, the detective that's working the case and has all the information is going to chat with you, like, here in a few minutes about it. So we're going to go down and have a conversation with him about that.

DEFENDANT: So if I'm not being arrested, where am I going?

OFFICER KIMBALL: We're going just to the police department so you can talk to detectives, but you're not under arrest right now.

OFFICER CARLSON: So the detective has the copies of the search warrant at the station. He knows about the case. He just asked us to do the leg work for him. And so that's why we're doing it this way.

DEFENDANT: But why am I—can he just give me a call? Like, I'm at work.

---

[7] Def. Ex. D-2 at 8:38–48.

[8] Def. Ex. D-2 at 9:25–32.

[9] Def. Ex. D-2 at 12:35–50.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 3 of 21
Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 3 of 21

OFFICER CARLSON: He wanted to talk to you in person about it, so.

DEFENDANT: Well, I'm working.

OFFICER CARLSON: We already let your boss know that you're going to be down there for the rest of the day.

DEFENDANT: I get it, but what's the—what did—what happened?

OFFICER CARLSON: Well, the detective's going to be able to talk to you about the case. So, we don't have the information to give you on that. I appreciate—

DEFENDANT: I don't feel comfortable at all.

OFFICER CARLSON: —that might be frustrating.

DEFENDANT: Excuse me, my voice is gone, bro. I don't feel comfortable going with anybody anywhere, but. What's the—unless I know, like, am I being charged with something? Did I do something wrong?

OFFICER CARLSON: No.

DEFENDANT: Okay, so.

OFFICER CARLSON: So you're not being charged with anything.

DEFENDANT: Yeah.

OFFICER CARLSON: He might be willing to come here and talk to you here, but…

DEFENDANT: I would prefer that.

OFFICER CARLSON: We'd be hanging out with you. Like just standing here until he gets here.

OFFICER KIMBALL: Yeah. I mean, I don't know if you want to talk to him around your coworkers about what's going on or not, so. Ultimately, he has to have a conversation with you about it. Like, we're going to your house to serve a warrant on your house. So I'm sure—

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 4 of 21
Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 4 of 21

DEFENDANT: Okay.

OFFICER KIMBALL: —you'd like to know the information about that as well.

DEFENDANT: Yeah. Like, are you guys serving it now?
OFFICER KIMBALL: We will be, yeah.

DEFENDANT: Okay. Can I call my wife and let her know before you guys storm in there?

OFFICER KIMBALL: Yeah, no, we can totally do that. Yeah, that's, that's no problem. We're not, we're not doing it right now, though, so you don't need to call her immediately. But the detective wants to talk, chat with you about it before that happens, so.

DEFENDANT: Okay. I mean, I don't care if it's in front of—I didn't do anything wrong, so I don't care if it's in front of my coworkers. You could tell him to come down here.[10]

Officer Carlson walked away and called Detective Wisel, who agreed to meet Defendant at his workplace.[11] Officer Carlson then rejoined Officer Kimball and Defendant and let them know Detective Wisel was on his way.[12] The exchange continued for another minute:

DEFENDANT: Did someone make, like, a report or something?

OFFICER KIMBALL: Well, obviously someone did, that's why there's a detective involved, so. Like I already explained, we don't have the details of what the investigation is about. He's gonna explain that to you. He is coming down?

OFFICER CARLSON: He is.

---

[10] Def. Ex. D-2 at 12:50–15:40.

[11] Def. Ex. D-3 at 0:00–1:04.

[12] Def. Ex. D-3 at 1:01–04.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 5 of 21

OFFICER KIMBALL: He's gonna come down here and talk to us if you don't wanna go there.

DEFENDANT: Yeah. I mean, we can go across—there's plenty of rooms that are empty that we could talk. But I—I don't—I'm clueless why you guys need to take me anywhere. I just don't feel comfortable, you guys just—

OFFICER KIMBALL: Well, typically we don't have conversations about, like, people's personal lives—

DEFENDANT: Yeah.

OFFICER KIMBALL: —like, in public. We go down, and like I said, you're not under arrest or anything.

DEFENDANT: Yeah.

OFFICER KIMBALL: But anytime that like the police are serving a warrant, we're gonna take your car from you. We're gonna serve a warrant on your house. Like, usually we take people down—

DEFENDANT: Sure.

OFFICER KIMBALL: —and talk face to face with the officer that's running the investigation.

DEFENDANT: Yeah.

OFFICER KIMBALL: And we're not the people that are doing that. Like, we didn't get the warrants. We're just the guys that show up on the street and facilitate giving you a ride down there.

DEFENDANT: Can I step inside and call my wife?

OFFICER KIMBALL: Sure, that's fine.

DEFENDANT: Okay.

OFFICER CARLSON: We have to hang out with you though until he gets down here.

DEFENDANT: Sure, but I'm just gonna—I mean this is a private property here, but—

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 6 of 21

Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 6 of 21

OFFICER KIMBALL: That's fine.[13]

Defendant then walked back inside and called his wife from a semi-enclosed room in the sales area of the store.[14] The two officers followed him and stood a few feet away from the entrance to the room while Defendant made the call, with Officer Kimball positioning himself at an angle that allowed him to see Defendant through the entrance.[15] When Defendant finished the call, he walked back outside into the parking lot, where the officers followed him.[16] At this point, it was 2:51 p.m., about seven minutes since the officers' initial contact with Defendant.[17]

For the next 11 minutes, Defendant and the two officers waited outside the store for Detective Wisel to arrive.[18] Defendant and the two officers initially stood by the front entrance of the store, but they eventually moved to the other end of the building at Defendant's request.[19] At both locations, the officers stood a few feet away from Defendant and faced him the entire time.[20] Defendant and the two officers talked intermittently, and at one point had the following exchange:

---

[13] Def. Ex. D-3 at 1:04–2:10.

[14] Def. Ex. D-3 at 2:10–3:30.

[15] Def. Ex. D-3 at 2:10–3:30.

[16] Def. Ex. D-4 at 0:25–55.

[17] Def. Ex. D-4 at 0:25–55.

[18] Def. Ex. D-4 at 0:55–12:00.

[19] Def. Ex. D-4 at 5:29–6:10.

[20] Def. Ex. D-4 at 0:55–12:00.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 7 of 21

Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 7 of 21

DEFENDANT: So are we like, questioned, and then am I following you guys to my house or something? Because I'm not going to have no car.

OFFICER CARLSON: Well, that's why we're offering to give you a ride, but you don't want to go to the station.

DEFENDANT: No, I'm sorry, the one thing I don't do is cop stations and hospitals.

OFFICER CARLSON: We might have other stuff to do, so I can't guarantee you that we'll be able to give you a ride after this is over.

DEFENDANT: Okay.

OFFICER CARLSON: Just 'cause there are only so many of us.

DEFENDANT: I got plenty of coworkers to take me home. But I don't know what's going on, is the main thing. You guys are saying I'm not arrested, but you guys won't leave me, so—

OFFICER CARLSON: Yeah.

DEFENDANT: —I kinda feel like I am arrested.

OFFICER CARLSON: Well, technically, you're being detained, so.

DEFENDANT: Alright, whatever—

OFFICER CARLSON: You can't leave but we're not taking you to [indecipherable].

DEFENDANT: —whatever will make me—I'll answer whatever question y'all want.[21]

At 3:02 p.m., Defendant went back inside the store to try to find a private room where he could talk with Detective Wisel.[22] The officers followed Defendant as he went through a non-public area of the store into a small hallway with two

---

[21] Def. Ex. D-4 at 4:08–5:02.

[22] Def. Ex. D-4 at 12:00–13.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 8 of 21

Case 3:25-cr-00052-SLG-KFR     Document 44     Filed 07/17/26     Page 8 of 21

private offices.[23]  Defendant entered one of the offices and sat down at the desk on one side of the room.[24]  Officer Kimball stood with his back against the wall facing Defendant from the opposite side of the room, while Officer Carlson stood in the middle of the adjacent doorway.[25]  Defendant made multiple phone calls while they continued waiting for Detective Wisel to arrive.[26]

At 3:18 p.m.—about 34 minutes after Officers Carlson and Kimball first contacted Defendant—Detective Wisel arrived at the industrial supply store.[27] Detective Wisel walked into the private office and introduced himself to Defendant as an APD detective.[28]  Officers Carlson and Kimball left the office but remained just outside the door.[29]  Detective Wisel and Defendant then had the following dialogue:

> DETECTIVE WISEL: They kinda told you that right now, I'm serving some search warrants.
>
> DEFENDANT: Sure?
>
> DETECTIVE WISEL: Okay. I've seized your vehicle, and we're doing a search warrant on your house.
>
> DEFENDANT: And…?

---

[23] Def. Ex. D-4 at 12:14–13:45.

[24] Def. Ex. D-4 at 13:50–14:08.

[25] Def. Ex. D-4 at 13:50–14:08.

[26] Def. Ex. D-4 at 14:45–15:15, 17:00–21:10.

[27] Def. Ex. D-5 at 0:00–1:05.

[28] Def. Ex. D-6 at 0:00–16.

[29] *See* Def. Ex. D-5 at 1:14–25; Def. Ex. D-6 at 9:40–45.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 9 of 21

DETECTIVE WISEL: And that's what I want to talk to you about.

DEFENDANT: Yeah.

DETECTIVE WISEL: And you're kinda, I forget, he told you you're being detained, right, at this point?

DEFENDANT: Yeah, I'm not arrested, but I'm being detained.

DETECTIVE WISEL: Right. So you're not free to leave.

DEFENDANT: I kind of feel like I'm arrested.

DETECTIVE WISEL: Right. So you're not free to leave. Right. You're not free. So. With that in mind, I'm going to have to—

DEFENDANT: Can you shut the door?

DETECTIVE WISEL: A hundred percent.

DEFENDANT: Yeah.

DETECTIVE WISEL: I'm just going to shut [indecipherable]—so. I got to keep it unlocked, but.

DEFENDANT: Sure. Sorry, I don't have no voice no more. I've been sick, so.

DETECTIVE WISEL: Oh, okay.

DEFENDANT: Yeah.

DETECTIVE WISEL: So before I can talk to you about that, I have to advise you of your rights. Not that you're under arrest, but you're not free to leave, right? So I'm restricting your freedoms.

DEFENDANT: Okay.

DETECTIVE WISEL: So that would trigger *Miranda*, right? So, I'm going to read those to you, and if you still want to talk to me about it, I'll explain everything to you, okay?

DEFENDANT: Sure.

DETECTIVE WISEL: You have a right to remain silent. Do you understand that?

DEFENDANT: Yes.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 10 of 21
Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 10 of 21

DETECTIVE WISEL: I just need a verbal yes or no that you understand.

DEFENDANT: Yes. Mm-hm.

DETECTIVE WISEL: Okay. Anything you say can and will be used against you in a court of law. Do you understand that?

DEFENDANT: Yes.

DETECTIVE WISEL: You have a right to talk to a lawyer and have him present with you while you're being questioned. Do you understand that?

DEFENDANT: Yes.

DETECTIVE WISEL: Okay. If you cannot afford to hire one, a lawyer, one will be appointed to represent you before any questioning, if you wish one. Do you understand that?

DEFENDANT: Yes.

DETECTIVE WISEL: You can decide at any time to exercise these rights in answering questions or making statements. Do you understand that?

DEFENDANT: Yes.

**DETECTIVE WISEL: Having those rights in mind, do you mind talking to me about why we're here today?**

**DEFENDANT: Well, I don't—I have no clue.**

DETECTIVE WISEL: Okay. Well, I tell you what. This is the incident that happened on July 10th involving your, your truck. Okay?

DEFENDANT: Wait, my truck?

DETECTIVE WISEL: Mm-hm.

DEFENDANT: Let me—can I just see my calendar?

DETECTIVE WISEL: Yeah. I'm sorry, not—I'm sorry, not July. January 10th. That was my bad. This month, a couple weeks ago. 10 days ago.

DEFENDANT: Okay. And the incident is?

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 11 of 21
Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 11 of 21

DETECTIVE WISEL: This is a drive-by shooting. Not too far from your house.

DEFENDANT: What the fuck?

DETECTIVE WISEL: And it's plain and simple.

DEFENDANT: Am I being charged with anything?

DETECTIVE WISEL: Not at this point.[30]

Detective Wisel then showed Defendant a photograph from the surveillance footage of the drive-by shooting, which captured the truck involved in the incident, a photograph of the truck from July 2024, and a photograph from the earlier video footage that showed Defendant working on his truck:[31]

DETECTIVE WISEL: Again, this is from the shooting, that's your truck before you painted it. There's it before you bought it. That's you when you were working on it outside your residence. It's the exact same vehicle, okay? There's not a doubt. Now that I've seen that you've changed it—I mean, the paint's so fresh, I can smell it.

DEFENDANT: Well that—wait. Okay. I've been planning to do that, working on my truck.

DETECTIVE WISEL: Okay. The stickers have been removed. Everything since the shooting. Not saying you did the shooting. What I am saying is your truck was involved. There's not, there's no doubt. That's a fact. So, we just need to figure out how that happened.

**DEFENDANT: One minute. I don't feel comfortable talking. This is a serious matter.**

**DETECTIVE WISEL: It is.**

**DEFENDANT: Now, am I being accused of doing something like that?**

---

[30] Def. Ex. D-6 at 0:05–2:25.

[31] The Court assumes Detective Wisel showed Defendant the photographs labeled as Attachments A, B, and C in his search warrant affidavit. *See* Docket 19-1 at 5–6.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 12 of 21
Case 3:25-cr-00052-SLG-KFR   Document 44   Filed 07/17/26   Page 12 of 21

DETECTIVE WISEL: If you were, you'd be under arrest for that, right?

DEFENDANT: Yes.

DETECTIVE WISEL: Right. Right now, it's still an open investigation, but your truck is most definitely involved.

DEFENDANT: Oh my God.

DETECTIVE WISEL: Unless you want to tell me someone else had your truck on the 10th.

DEFENDANT: Dude, my truck was at home.

DETECTIVE WISEL: Oh, it's not. It's in the shooting. It's on video.

DEFENDANT: What the fuck?

DETECTIVE WISEL: All of it's on video.

DEFENDANT: So you're telling me someone took my fucking truck, and did a fucking—

DETECTIVE WISEL: And put it back, right? Come on, Jimmy. You've been through this before, right? You're a felon out of California?

DEFENDANT: Yes. But I've changed.

DETECTIVE WISEL: I'm not saying you haven't. I'm just saying, now you're gonna try to say someone took—

DEFENDANT: No.

DETECTIVE WISEL: —your truck and then put it back?

DEFENDANT: Look, I'm not saying anything. I'm not saying that. I'm just implying, who the fuck, I didn't do a fucking drive-by shooting.[32]

Later in the interview, Defendant admitted to having firearms in his residence.[33] The interview lasted about 10 minutes and ended when Defendant

---

[32] Def. Ex. D-6 at 2:25–4:12.

[33] Def. Ex. D-6 at 6:10–6:30.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 13 of 21

Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 13 of 21

invoked his right to counsel.  Defendant was formally arrested at the end of the interview.[34]

On August 20, 2025, a grand jury returned an indictment charging Defendant with one count of felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[35]

Defendant now moves to suppress all of the statements he made to the officers during the encounter on January 21, 2025.[36]  He maintains that "[t]he duration, manner and scope of the detention exceeded the limits of an investigative detention under *Terry v. Ohio*, 392 U.S. 1 (1968)," such that the statements "must be suppressed as fruit of the poisonous tree."[37]  Alternatively, Defendant contends that his statements to Detective Wisel are "inadmissible because he never provided a valid, knowing and intelligent waiver of his *Miranda* rights, and the interrogation continued despite Vue's unambiguous request to terminate the interrogation."[38]

The Government "does not dispute that Vue's detention was more than a momentary stop for on-the-spot questioning permissible under *Terry.*"[39]  Rather,

---

[34] Def. Ex. D-6 at 9:40–53.

[35] Docket 2.

[36] Docket 19.

[37] Docket 19 at 1, 11-19.

[38] Docket 19 at 2, 19-24 (citing *Miranda v. Arizona,* 384 U.S. 436 (1966)).

[39] Docket 30 at 9.  *But see* Docket 30 a 9 ("Vue was not detain[ed].").

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 14 of 21
Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 14 of 21

the Government maintains that the officers had probable cause to seize and question Defendant.[40]  As to Defendant's argument for suppression based on *Miranda*, the Government "does not dispute that Vue was interrogated by Det[ective] Wisel for purposes of *Miranda*," but maintains that Defendant was not in custody for *Miranda* purposes and therefore Detective Wisel was not required to inform Defendant of his *Miranda* rights and no Fifth Amendment violation occurred.[41]  Alternatively, the Government contends that Defendant waived his *Miranda* rights.[42]

In the Report and Recommendation, Judge Reardon recommended that Defendant's Motion to Suppress at Docket 19 be granted.  Judge Reardon found that Defendant's detention violated the Fourth Amendment because the detention was not justified by probable cause and that the suppression of Vue's statements was warranted on that basis.[43]  As to the Fifth Amendment issue, Judge Reardon found that no *Miranda* violation occurred.[44]  The Court now considers de novo each party's objections to Judge Reardon's Report and Recommendation.

---

[40] Docket 30 at 9.

[41] Docket 30 at 11, 16.

[42] Docket 30 at 16-17.

[43] Docket 31 at 16. The Report and Recommendation noted that the Government made "no attempt to counter" Defendant's arguments that the statements he made to Detective Wisel "were the fruit of his unlawful detention and were not attenuated from that Fourth Amendment violation." *See* Docket 31 at 24.

[44] Docket 31 at 16.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 15 of 21

**DISCUSSION**

I.  The Government's Objections

In the Report and Recommendation, Judge Reardon noted that because the Government did not dispute that the officers' detention of Defendant amounted to more than a brief investigatory stop pursuant to *Terry*, the question before the Court was whether Defendant's detention was supported by probable cause.[45]  In its objections, the Government contradicts its earlier concession that "Vue's detention was more than a momentary stop for on-the-spot questioning permissible under *Terry*."[46]  In its objections, the Government now maintains "that the detention was a justified investigatory stop until the conclusion of the interview" and that there was reasonable suspicion to justify an investigatory stop under *Terry*.[47]

To explain the about-face, the Government writes that "[t]he lower court did not consider whether detention was justified as an investigatory stop based on reasonable suspicion because that argument was not raised in the government's response.  As the standard is de novo review, the government will address the issue now."[48]

---

[45] Docket 31 at 20-21.

[46] Docket 30 at 9; *see* Docket 41 at 3 ("Following the Court's contrary ruling on [the probable cause determination], the government now seeks to unconcede what it has already conceded, and instead seeks to pursue an alternative theory that it had admittedly abandoned.").

[47] Docket 38 at 4-5.

[48] Docket 38 at 2.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 16 of 21

A district court judge may, but is not required to, consider claims that are presented for the first time in a party's objections to a magistrate judge's report and recommendation.[49] The Court is not inclined to exercise its discretion on de novo review to address the *Terry* stop issue, as the Government explicitly conceded this issue that it now raises in its objections.

Even if the Court were to consider the Government's argument that the seizure was only a brief investigatory *Terry* stop, the Court would reject that argument. To determine "whether and when an investigatory stop becomes an arrest," courts evaluate "[t]he totality of the circumstances."[50] "In looking at the totality of the circumstances, [courts] examine two main components of the detention. First is 'the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted.'"[51] Courts "'review the situation from the perspective of the person seized,' assessing whether 'a reasonable innocent person in these circumstances would . . . have felt free to leave after brief questioning.'"[52] Second, courts evaluate "'the justification

---

[49] *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000).

[50] *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014).

[51] *Id.* (quoting *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996)).

[52] *Id.* (quoting *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1295-96 (9th Cir. 1988)).

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 17 of 21

Case 3:25-cr-00052-SLG-KFR     Document 44     Filed 07/17/26     Page 17 of 21

for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken.'"[53]

Here, officers went to Defendant's workplace to transport him to the police station for questioning. Officer Kimball was visibly armed and wearing a tactical vest with police markings and a badge.[54] After Defendant refused to go to the police station and asked why Detective Wisel could not call him on the phone to question him, Officer Kimball told Defendant that "[Detective Wisel was] gonna come down here and talk to us if you don't wanna go there."[55] The officers followed Defendant inside when he made a phone call to his wife, watching him from the doorway, and then followed him back outside where they waited for Detective Wisel. Further, in response to Defendant saying "You guys are saying I'm not arrested, but you guys won't leave me, so—I kinda feel like I am arrested," Officer Carlson said "Well, technically, you're being detained" and "You can't leave but we're not taking you to [indecipherable]."[56] In total, Officers Kimball and Carlson were with Defendant for 34 minutes before Detective Wisel arrived. Detective Wisel then questioned Defendant for 10 minutes.

---

[53] *Id.* (quoting *Lambert*, 98 F.3d at 1185).

[54] Although the record does not establish whether Officer Carlson was armed or what he was wearing during the encounter, the Government implies that he was armed and clad like Officer Kendall. Docket 30 at 2 (representing that "[b]oth officers were in plain clothes and did not brandish their weapons at any point").

[55] Def. Ex. D-2 at 12:50–15:40; Def. Ex. D-3 at 1:04–2:10.

[56] Def. Ex. D-4 at 4:08–5:02.

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 18 of 21
Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 18 of 21

Considering the totality of the circumstances, the Court finds that Defendant's detention was akin to an arrest. While the officers were not "aggressive," the officers approached Defendant at his workplace; at least one officer was armed and wearing a tactical vest and badge; the officers followed Defendant around the site, including when Defendant went inside to call his wife; and they told Defendant that he could not leave. Officers Kimball and Carlson waited with Defendant for 34 minutes before Detective Wisel arrived. Then Detective Wisel questioned Defendant for 10 minutes. The Court finds that these circumstances show that during the encounter, Defendant's liberty was significantly restricted.

Because Defendant's detention was akin to an arrest, probable cause was required to justify the detention. The Government does not object to Judge Reardon's conclusion that the officers lacked probable cause that Defendant committed a crime and that suppression is the appropriate remedy.[57] Therefore, the Government's objections to the Report and Recommendation are OVERRULED. The Court ADOPTS the Report and Recommendation's finding that Defendant's detention violated the Fourth Amendment and that suppression of his statements is warranted.

---

[57] The Court does not review Judge Reardon's recommendation that the search warrant lacked probable cause. *See* Fed. R. Crim. P. 59(b)(2) ("Failure to object in accordance with this rule waives a party's right to review.").

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 19 of 21
Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 19 of 21

## II.    Defendant's Objections

In the Report and Recommendation, Judge Reardon concluded that Defendant was subjected to a custodial interrogation by Detective Wisel and therefore *Miranda* applied.[58]   However, Judge Reardon also concluded that Defendant waived his *Miranda* rights and did not later invoke his right to silence.[59]

Defendant objects to Judge Reardon's conclusion that Defendant's "statements during custodial interrogation were obtained in compliance with *Miranda*, and that Vue did not thereafter invoke his right to silence."[60]   However, because the Court adopts Judge Reardon's conclusion as to the Fourth Amendment issue above, the Court need not consider whether Defendant's statements to Detective Wisel must also be suppressed under the Fifth Amendment.[61]

## CONCLUSION

For the foregoing reasons, the Report and Recommendation at Docket 31 is **ADOPTED in part**.  The Court finds that Defendant's detention was akin to an arrest and probable cause to detain Defendant was lacking.   Therefore,

---

[58] Docket 31 at 25-30.

[59] Docket 31 at 30-36.

[60] Docket 39 at 1.

[61] *United States v. Patzer*, 277 F.3d 1080, 1085 (9th Cir. 2002) ("[R]eading *Miranda* warnings to a suspect after an unlawful arrest does not automatically act as a 'cure-all' and remove the Fourth Amendment taint from subsequently obtained statements . . . ." (quoting *Brown v. Illinois*, 422 U.S. 590, 602-03 (1975))).

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 20 of 21

Defendant's Motion to Suppress at Docket 21 is **GRANTED**; Defendant's detention

violated the Fourth Amendment and his statements of January 21, 2025, shall be

**SUPPRESSED**.

DATED this 16th day of July, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:25-cr-00052-SLG-KFR, *United States v. Vue*
Order on Report and Recommendation on Motion to Suppress
Page 21 of 21

Case 3:25-cr-00052-SLG-KFR    Document 44    Filed 07/17/26    Page 21 of 21